Orville MANN, Plaintiff,

v.

Allen CARVER, Defendant.

No. 86–383C(1).

United States District Court, E.D. Missouri, E.D.

Aug. 25, 1986.

Kenneth V. Byrne, Clayton, Mo., for plaintiff.

Wesley D. Wedemeyer, Asst. U.S. Atty., St. Louis, Mo., for defendant.

## MEMORANDUM

NANGLE, Chief Judge.

This case is now before the Court on the motion of defendant Allen Carver to dismiss for failure to state a claim or, alternatively, for summary judgment. Plaintiff, a former Manager of the St. Louis Telephone Employees Credit Union (SLTECU), sues defendant, a Regional Director of the National Credit Union Administration (NCUA), for libel, slander, defamation, and tortious interference with plaintiff's employment contract. In defense of plaintiff's tort action, defendant pleads absolute privilege. This Court upholds defendant's claim of privilege and grants summary judgment on defendant's motion.

Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if he can "show that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." *Fed.R.Civ.P.* 56(c). *See also Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). In passing on a motion for summary judgment, a court is required to view the facts and inferences that may be derived therefrom in the light most favorable to the non-moving party. *Buller v. Buechler,* 706 F.2d 844, 846 (8th Cir.1983); *Vette Co. v. Aetna Casualty and Surety Co.,* 612 F.2d 1076, 1077 (8th Cir.1980). The burden of proof is on the moving party and a court should not grant a summary judgment motion unless it is convinced that there is no evidence to sustain a recovery under any circumstances. *Buller,* 706 F.2d at 846. However, under Rule 56(e), a party opposing a motion for summary judgment may not rest upon the allegations of his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e). *See also* 10A Wright, Miller and Kane, *Federal Practice and Procedure,* § 2739 (1983).

The SLTECU was at all relevant times a federally insured credit union, chartered by the State of Missouri. Plaintiff served as Manager of the SLTECU. During 1982, the SLTECU was growing rapidly. Due in part to this rapid growth, the SLTECU came to the attention of defendant during a review of federally insured credit unions. Certain policies and practices of the SLTECU caused employees of the National Credit Union Administration (NCUA) to become concerned about the credit union's financial stability. As a result, the NCUA Director of Insurance met with officials of the SLTECU in June 1982. In August of that year, employees of the NCUA and the responsible Missouri agency conducted a joint review of the credit union. Based upon its investigation, the Board of the NCUA issued a Notice of Charges to the credit union in October, 1982. This Notice set out the unsound practices of the credit union and allowed the Board of Directors of the credit union 60 days to correct the deficiencies before formal proceedings to cancel the credit union's federal insurance were begun. The NCUA neither filed a Notice of Charges regarding plaintiff nor formally sought to remove plaintiff as Manager.

During the relevant period, defendant Carver served as a Deputy Director of the Department of Examination and Supervision of the NCUA. In this capacity, he participated in the joint state and federal review of the SLTECU and reported the results to the NCUA Board. On the basis of this report, the NCUA Board issued its Notice of Charges. The defendant delivered these charges to the credit union and oversaw the credit union's attempts toward resolving its problems. The defendant met with the Board of Directors of the credit union a number of times following the filing of charges. As part of this supervi-

sion, defendant and other NCUA employees proposed a reorganization of the SLTECU staff to the SLTECU Board of Directors. All but one Director agreed to resign voluntarily.

By June, 1983, several practices and inadequacies listed in the Notice of Charges had not been corrected. During the SLTECU Board of Directors meeting on June 1, 1983, the defendant requested plaintiff's resignation as Manager. Subsequently, the SLTECU Board of Directors terminated plaintiff's employment contract, precipitating this lawsuit.

This action was filed originally in the Circuit Court for the City of St. Louis, Missouri and removed by defendant to this Court under 28 U.S.C. § 1442.

Plaintiff alleges that defendant harassed, threatened, and intimidated the SLTECU Board of Directors to induce plaintiff's termination. Plaintiff alleges also that defendant maliciously and wrongfully defamed, slandered, and libeled plaintiff in the credit union industry. As defendant argues, any actions regarding plaintiff's employment or resignation are within the scope of defendant's statutory authority and, as such, entitled to immunity from tort liability. In response, plaintiff asserts that defendant is not entitled to immunity because defendant exceeded his statutory authority. Thus, the issue for decision is whether defendant acted within the scope of his employment in seeking plaintiff's resignation.

Generally, federal officials performing discretionary functions are shielded from liability for civil damages insofar as they act within the scope of their authority and their conduct does not violate clearly established statutory or constitutional rights known to a reasonable person. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Barr v. Matteo,* 360 U.S. 564, 569–76, 79 S.Ct. 1335, 1338–42, 3 L.Ed.2d 1434 (1959) (absolute privilege in libel action); *Butz v. Economou,* 438 U.S. 478, 500, 98 S.Ct. 2894, 2907, 57 L.Ed.2d 895 (1978) (qualified privilege for violations of constitutional rights).

This privilege is intended to encourage Government officials to perform their duties unhampered by the fear of damage suits. 360 U.S. at 571, 79 S.Ct. at 1339. The privilege extends to all matters committed by law to the official's control or supervision regardless of the official's motive or intent. 360 U.S. at 573–75, 79 S.Ct. at 1340–42; *Spalding v. Vilas,* 161 U.S. 483, 498–99, 16 S.Ct. 631, 637, 40 L.Ed. 780 (1896). Thus, this Court must examine the extent of defendant's authority to determine whether his acts concerning plaintiff fall within that authority.

In 1970, Congress passed the Federal Credit Union Act, 12 U.S.C. §§ 1751–95i (1982). Designed to insure credit union stability and to protect modest savers, the Act provided federal insurance for savers' deposit at state and federally chartered credit unions and established the NCUA to supervise insured credit unions. *See* House Comm. on Banking and Currency, Federal Credit Union Act, H.Rep. No. 1457, 91st Cong., *reprinted in* 1970 U.S.Code Cong. & Ad.News 4166, 4167; 12 U.S.C. § 1752a, 1781–83, 1784(a). The Act authorizes the NCUA to terminate a credit union's insured status and to remove credit union officers and directors. In addition, the Act specified procedures for these actions. Before terminating insurance, the NCUA must notify the credit union of its unsafe and unsound practices and set a hearing on these charges. 12 U.S.C. § 1786(b). Before removing an officer or director, the NCUA must notify the individual of the charge and set a hearing. 12 U.S.C. § 1786(g). Incident to this authority, NCUA officials typically enter into negotiations with the credit union officers and directors. These negotiations are intended to bring the credit union into compliance with NCUA standards without the need for formal proceedings.

No essential facts are in dispute. Here, defendant served as Deputy Director of Examination and Supervision both before and after the filing of a Notice of Charges against the SLTECU. In this capacity, defendant proposed a reorganization of the

132

credit union's staff to its Board of Directors. Such reorganizations are typically used during the NCUA's supervision of a troubled institution. Thus, defendant's acts were within his statutory authority and are entitled to absolute privilege from tort immunity. As noted above, defendant's malice or other improper motivation is irrelevant to the existence of the privilege.

Plaintiff has not alleged a due process or other constitutional claim. Assuming plaintiff alleged a due process claim, he could not succeed. Because the NCUA did not institute formal removal proceedings under § 1786(g), plaintiff was not entitled to the procedures set out in that section. Plaintiff's claim must be for breach of contract by the SLTECU Board of Directors, a claim which plaintiff is apparently pursuing in state court. Accordingly, defendant's motion for summary judgment is granted.